IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

CATHERINE WINWARD-KING,                 6:13-cv-00455-BR

      Plaintiff,                        OPINION AND ORDER

v.

CAROLYN W. COLVIN, Acting
Commissioner, Social Security
Administration,[1]

      Defendant.


GEORGE J. WALL
Law Offices of George J. Wall
1336 E. Burnside
Suite 130
Portland, OR 97214
(503) 236-0068

      Attorney for Plaintiff

---

[1] Carolyn W. Colvin became the Acting Commissioner of Social Security on February 14, 2013. Pursuant to Rule 25(d) of the Federal Rules of Civil Procedure, Carolyn W. Colvin should be substituted for Michael J. Astrue as Defendant in this case. No further action need be taken to continue this case by reason of the last sentence of section 205(g) of the Social Security Act, 42 U.S.C. § 405.

1  -  OPINION AND ORDER

**S. AMANDA MARSHALL**
United States Attorney
**ADRIAN L. BROWN**
Assistant United States Attorney
1000 S.W. Third Avenue, Suite 600
Portland, OR  97204-2902
(503) 727-1003

**DAVID MORADO**
Regional Chief Counsel
**LARS J. NELSON**
Special Assistant United States Attorneys
Social Security Administration
701 Fifth Avenue, Suite 2900, M/S 221A
Seattle, WA 98104
(206) 615-2909

        Attorneys for Defendant

**BROWN, Judge.**

   Plaintiff Catherine Winward-King seeks judicial review of a final decision of the Commissioner of the Social Security Administration (SSA) in which she denied Plaintiff's applications for Disability Insurance Benefits (DIB) under Title II of the Social Security Act and Supplemental Security Income (SSI) payments under Title XVI.

   This Court has jurisdiction to review the Commissioner's decision pursuant to 42 U.S.C. § 405(g).  Following a thorough review of the record, the Court **AFFIRMS** the Commissioner's final decision and **DISMISSES** this matter.

2  -  OPINION AND ORDER

## ADMINISTRATIVE HISTORY

Plaintiff filed her applications for DIB and SSI on May 30, 2010. Tr. 25. The applications were denied initially and on reconsideration. An Administrative Law Judge (ALJ) held a hearing on July 9, 2011. Tr. 25. At the hearing Plaintiff was represented by an attorney. Tr. 25. Plaintiff, lay witness John Winward, and a Vocational Expert (VE) testified at the hearing. Tr. 25.

The ALJ issued a decision on August 30, 2012, in which he found Plaintiff was not disabled and, therefore, is not entitled to benefits. Tr. 39. That decision became the final decision of the Commissioner on January 17, 2013, when the Appeals Council denied Plaintiff's request for review. Tr. 7.

## BACKGROUND

Plaintiff was born on August 22, 1963, and was 48 years old at the time of the hearing. Tr. 160. Plaintiff completed one year of college. Tr. 310. She has past relevant work experience as a bus driver, caregiver, and housekeeper. Tr. 37, 1042.

Plaintiff alleges she has been disabled since April 29, 2008, due to chronic migraines; chronic neck, shoulder, arm, and back pain; leg and foot pain; anxiety, and depression. Tr. 138, 191.

Except when noted, Plaintiff does not challenge the ALJ's

3 - OPINION AND ORDER

summary of the medical evidence. After carefully reviewing the medical records, this Court adopts the ALJ's summary of the medical evidence. See Tr. 27-37.

## STANDARDS

The initial burden of proof rests on the claimant to establish disability. *Molina v. Astrue*, 674 F.3d 1104, 1110 (9th Cir. 2012). To meet this burden, a claimant must demonstrate her inability "to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which . . . has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A). The ALJ must develop the record when there is ambiguous evidence or when the record is inadequate to allow for proper evaluation of the evidence. *McLeod v. Astrue*, 640 F.3d 881, 885 (9th Cir. 2011)(quoting *Mayes v. Massanari*, 276 F.3d 453, 459-60 (9th Cir. 2001)).

The district court must affirm the Commissioner's decision if it is based on proper legal standards and the findings are supported by substantial evidence in the record as a whole. 42 U.S.C. § 405(g). *See also Brewes v. Comm'r of Soc. Sec. Admin.*, 682 F.3d 1157, 1161 (9th Cir. 2012). Substantial evidence is "relevant evidence that a reasonable mind might accept as adequate to support a conclusion." *Molina*, 674 F.3d.

4 - OPINION AND ORDER

at 1110-11 (quoting *Valentine v. Comm'r Soc. Sec. Admin.*, 574 F.3d 685, 690 (9th Cir. 2009)). It is more than a "mere scintilla" of evidence but less than a preponderance. *Id.* (citing *Valentine*, 574 F.3d at 690).

The ALJ is responsible for determining credibility, resolving conflicts in the medical evidence, and resolving ambiguities. *Vasquez v. Astrue*, 572 F.3d 586, 591 (9th Cir. 2009). The court must weigh all of the evidence whether it supports or detracts from the Commissioner's decision. *Ryan v. Comm'r of Soc. Sec.*, 528 F.3d 1194, 1198 (9th Cir. 2008). Even when the evidence is susceptible to more than one rational interpretation, the court must uphold the Commissioner's findings if they are supported by inferences reasonably drawn from the record. *Ludwig v. Astrue*, 681 F.3d 1047, 1051 (9th Cir. 2012). The court may not substitute its judgment for that of the Commissioner. *Widmark v. Barnhart*, 454 F.3d 1063, 1070 (9th Cir. 2006).

## DISABILITY ANALYSIS

### I. The Regulatory Sequential Evaluation

The Commissioner has developed a five-step sequential inquiry to determine whether a claimant is disabled within the meaning of the Act. *Keyser v. Comm'r of Soc. Sec. Admin.*, 648 F.3d 721, 724 (9th Cir. 2011). *See also Parra v. Astrue*, 481

5 - OPINION AND ORDER

F.3d 742, 746 (9th Cir. 2007); 20 C.F.R. §§ 404.1520, 416.920. Each step is potentially dispositive.

At Step One the claimant is not disabled if the Commissioner determines the claimant is engaged in substantial gainful activity. 20 C.F.R. §§ 404.1520(a)(4)(I), 416.920(a)(4)(I). *See also Keyser*, 648 F.3d at 724.

At Step Two the claimant is not disabled if the Commissioner determines the claimant does not have any medically severe impairment or combination of impairments. 20 C.F.R. §§ 404.1509, 404.1520(a)(4)(ii), 416.920(a)(4)(ii). *See also Keyser*, 648 F.3d at 724.

At Step Three the claimant is disabled if the Commissioner determines the claimant's impairments meet or equal one of the listed impairments that the Commissioner acknowledges are so severe as to preclude substantial gainful activity. 20 C.F.R. §§ 404.1520(a)(4)(iii), 416.920(a)(4)(iii). *See also Keyser*, 648 F.3d at 724. The criteria for the listed impairments, known as Listings, are enumerated in 20 C.F.R. part 404, subpart P, appendix 1 (Listed Impairments).

If the Commissioner proceeds beyond Step Three, she must assess the claimant's residual functional capacity (RFC). The claimant's RFC is an assessment of the sustained, work-related physical and mental activities the claimant can still do on a regular and continuing basis despite her limitations. 20 C.F.R.

§§ 404.1520(e), 416.920(e).  *See also* Social Security Ruling (SSR) 96-8p.  "A 'regular and continuing basis' means 8 hours a day, for 5 days a week, or an equivalent schedule."  SSR 96-8p, at *1.  In other words, the Social Security Act does not require complete incapacity to be disabled.  *Taylor v. Comm'r of Soc. Sec. Admin.*, 659 F.3d 1228, 1234-35 (9th Cir. 2011)(citing *Fair v. Bowen*, 885 F.2d 597, 603 (9th Cir. 1989)).  The assessment of a claimant's RFC is at the heart of Steps Four and Five of the sequential analysis when the ALJ is determining whether a claimant can still work despite severe medical impairments.  An improper evaluation of the claimant's ability to perform specific work-related functions "could make the difference between a finding of 'disabled' and 'not disabled.'"  SSR 96-8p, at *4.

At Step Four the claimant is not disabled if the Commissioner determines the claimant retains the RFC to perform work she has done in the past.  20 C.F.R. §§ 404.1520(a)(4)(iv), 416.920(a)(4)(iv).  *See also Keyser*, 648 F.3d at 724.

If the Commissioner reaches Step Five, she must determine whether the claimant is able to do any other work that exists in the national economy.  20 C.F.R. §§ 404.1520(a)(4)(v), 416.920(a)(4)(v).  *See also Keyser*, 648 F.3d at 724-25.  Here the burden shifts to the Commissioner to show a significant number of jobs exist in the national economy that the claimant can perform.  *Lockwood v. Comm'r Soc. Sec. Admin.*, 616 F.3d 1068, 1071 (9th

7 - OPINION AND ORDER

Cir. 2010). The Commissioner may satisfy this burden through the testimony of a VE or by reference to the Medical-Vocational Guidelines set forth in the regulations at 20 C.F.R. part 404, subpart P, appendix 2. If the Commissioner meets this burden, the claimant is not disabled. 20 C.F.R. §§ 404.1520(g)(1), 416.920(g)(1).

## ALJ'S FINDINGS

At Step One the ALJ found Plaintiff has not engaged in substantial gainful activity since April 29, 2008, her alleged onset date. Tr. 27.

At Step Two the ALJ found Plaintiff has the severe impairments of "cervical strain, obesity, degenerative disc disease, migraines, and panic disorder associated with a psychological and general medical condition."[2] Tr. 27.

At Step Three the ALJ found Plaintiff's impairments do not meet or equal the criteria for any impairment in the Listing of Impairments. Tr. 28. The ALJ found Plaintiff has the residual functional capacity to perform sedentary work "except that she can occasionally climb stairs and ramps, but can never climb ladders, ropes and scaffolds. She can no more than occasionally

---

[2] The Court notes the ALJ based his findings as to these impairments on the medical diagnoses of Plaintiff that appear in the record rather than statements in Plaintiff's applications. See Tr. 13-14, 203.

8 - OPINION AND ORDER

stoop, crouch, and perform overhead work bilaterally. She is limited generally to unskilled work with only occasional public contact." Tr. 30.

At Step Five the ALJ found Plaintiff could perform jobs that exist in significant numbers in the national economy such as addresser, semiconductor wafer breaker, and microfilm document preparer. Tr. 38. Accordingly, the ALJ found Plaintiff is not disabled. Tr. 39.

## DISCUSSION

Plaintiff contends the ALJ erred when he (1) improperly rejected the opinion of treating physician Elizabeth Callaghan, M.D.; (2) improperly rejected the opinion of treating physician Eric Murray, M.D.; and (3) improperly discredited Plaintiff's testimony.

### I. Medical opinion testimony

An ALJ may reject an examining or treating physician's opinion when it is inconsistent with the opinions of other treating or examining physicians if the ALJ makes "findings setting forth specific, legitimate reasons for doing so that are based on substantial evidence in the record." *Thomas v. Barnart*, 278 F.3d 947, 957 (9th Cir. 2002)(quoting *Magallanes v. Bowen*, 881 F.2d 747, 751 (9th Cir. 1989)). Specific, legitimate reasons for rejecting a physician's opinion may include reliance on a

9 - OPINION AND ORDER

claimant's discredited subjective complaints, inconsistency with medical records, inconsistency with a claimant's testimony, and inconsistency with a claimant's daily activities. *Tommasetti v. Astrue,* 533 F.3d 1035, 1040 (9th Cir. 2008). *See also Andrews v. Shalala,* 53 F.3d 1035, 1042 (9th Cir. 1995).

When the medical opinion of an examining or treating physician is uncontroverted, however, the ALJ must give "clear and convincing reasons" for rejecting it. *Thomas v. Barnhart,* 278 F.3d 947, 957 (9th Cir. 2002). *See also Lester,* 81 F.3d 821, 830-32 (9th Cir. 1995).

Generally, the more consistent an opinion is with the record as a whole, the more weight an opinion should be given. 20 C.F.R. § 416.927(c)(4).

### A. Dr. Callaghan's opinion

Plaintiff contends the ALJ erred when he improperly rejected treating physician Dr. Callaghan's opinion that Plaintiff is limited to work activities that allow her to alternate between sitting and standing and that do not require her to tilt her head down more than occasionally.

The ALJ noted Dr. Callaghan recommended Plaintiff be restricted to performing modified light-duty office work between October 31, 2008, and November 15, 2008, due to the fact that Plaintiff's former work driving a school bus exacerbated Plaintiff's cervical spine condition. Tr. 31, 618. The ALJ also

10 - OPINION AND ORDER

noted Dr. Callaghan cleared Plaintiff for light-duty work in January 2009. Tr. 36, 624.

In July 2012, Dr. Callaghan completed a check-off form provided by Plaintiff's attorney on which Dr. Callaghan checked "yes" when asked if Plaintiff was: limited to lifting, pushing, and pulling more than 10 pounds occasionally; limited to work activities that allow her to alternate sitting and standing; and restricted from work that requires her to tilt her head down more than occasionally. Tr. 991. Dr. Callaghan also checked "yes" when asked if Plaintiff would be able to sustain more than three to five hours of work per day, but noted: "At this point, this is likely the case. It may change over time." Tr. 991.

The ALJ rejected Dr. Callaghan's opinion in part on the grounds that "Dr. Callaghan did not explain why the claimant needed to alternate sitting and standing and tilt down her head only occasionally." Tr. 36. Accordingly, the ALJ did not adopt these limitations into the residual functional capacity. Tr. 36.

When a medical opinion lacks a sufficient explanation, the Commissioner may give less weight to that opinion. See 20 C.F.R. § 404.1527(c)(3), § 416.927(c)(3)("The better an explanation a source provides for an opinion, the more weight we will give that opinion."). Furthermore, an ALJ may reject medical opinions "because they [are] check-off reports that [do] not contain any explanation of the bases of their conclusions." Crane v.

11 - OPINION AND ORDER

*Shalala*, 76 F.3d 251, 253 (9th Cir. 1996). Accordingly, the Court concludes the ALJ properly discounted the opinion of Dr. Callaghan with respect to these two limitations.

In any event, the Court concludes the limitations Dr. Callaghan suggested are not supported by evidence in the record. As noted, Dr. Callaghan cleared Plaintiff for light-duty work in 2008. At that time, Dr. Callaghan did not indicate Plaintiff needed to alternate between sitting and standing throughout the day. Tr. 624. Similarly, on March 3, 2009, Dorie Halsey, P.T., completed a Physical Capacity Evaluation II report and opined Plaintiff was limited to the "sedentary/light category of work," and did not suggest Plaintiff needed a sit-stand option. Tr. 696.

As to Dr. Callaghan's opinion that Plaintiff cannot tilt her head down more than occasionally, the record reflects Plaintiff's neck pain primarily caused her to have difficulty turning her head from side to side and tilting it up, rather than tilting it down. For example, in March 2009 physical therapist Dorie Halsey opined Plaintiff could not return to her work as a bus driver because she could not fully turn her head from side-to-side. Tr. 696. Similarly, in January 2010, examining physician Matthew McGehee, M.D., evaluated Plaintiff for neck pain at which time Plaintiff complained her pain was "worse with driving, lifting, [and] looking over her shoulder." Tr. 834. Dr. McGehee noted

12 - OPINION AND ORDER

Plaintiff had increased pain with extension (tilting up), but did not note she had pain with flexion (tilting down). Tr. 836. Furthermore, by late 2010, Plaintiff appears to have regained range of motion in her neck. In December 2010, treating physician Eric Murray, M.D. noted Plaintiff's neck was "supple with good range of motion." Tr. 894. On August 21, 2012, examining physician Kirk L. Weller, M.D., similarly noted Plaintiff's neck was "supple with full range of motion." Tr. 1008.

Accordingly, the Court concludes on this record that the ALJ did not err when he rejected Dr. McCallaghan's opinion because the ALJ provided legally sufficient reasons supported by the record for doing so.

### B. Dr. Murray's opinion

Plaintiff also contends the ALJ erred when he improperly rejected the opinion of treating physician Dr. Murray.

In July 2012, Dr. Murray completed an identical check-off form from Plaintiff's attorney as that which Dr. McCallaghan completed. Dr. Murray checked "yes" when asked if Plaintiff was: limited to lifting, pushing, and pulling more than 10 pounds occasionally; limited to work activities that allow her to alternate sitting and standing; and restricted from work which requires her to tilt her head down more than occasionally. Tr. 994. Dr. Murray also checked "yes" to when asked if

13 - OPINION AND ORDER

Plaintiff would be able to sustain more than three to five hours of work per day and wrote "yes" when asked if Plaintiff was "likely to miss one or more days per week because of the effects of her condition." Tr. 994. In the "Comments" section of the form, Dr. Murray wrote: "[Plaintiff] also has poorly controlled diabetes with neuropathy, which adds to her disability." Tr. 994.

The ALJ gave Dr. Murray's opinion limited weight because he found it was not consistent with the evidence in the record and not supported with objective evidence of neuropathy. Tr. 36.

As noted, the Court concludes the limitations restricting Plaintiff to work that allows her to alternate between sitting and standing and that only requires her to tilt her head down occasionally is not supported by evidence in the record. The Court also notes the record does not include any positive tests for neuropathy. Although examining physician Dr. Weller diagnosed Plaintiff with "diabetic polyneuropathy" in August 2012, the severity of the symptoms related to this diagnosis is questionable in light of the fact that Dr. Weller also commented "I do not doubt [Plaintiff] may at times have 'shooting pains' but I do think there is an element of exaggerated pain responses in this woman." Tr. 1009. The Court also notes Plaintiff did not object to the ALJ's decision that Plaintiff's diabetes is not a severe impairment.

14 - OPINION AND ORDER

The ALJ also noted Dr. Murray's opinion that Plaintiff would likely miss one or more days of work per week is contradicted by Dr. McCallaghan who did not indicate Plaintiff would miss work due to her medical conditions. Tr. 36, 991.

Accordingly, the Court concludes on this record that the ALJ did not err when he rejected Dr. Murray's opinion because the ALJ provided legally sufficient reasons supported by the record for doing so.

## II.  Plaintiff's testimony

Plaintiff alleges the ALJ erred when he failed to give clear and convincing reasons for discrediting her testimony.

In *Cotton v. Bowen* the Ninth Circuit established two requirements for a claimant to present credible symptom testimony: The claimant must produce objective medical evidence of an impairment or impairments, and she must show the impairment or combination of impairments could reasonably be expected to produce some degree of symptom. *Cotton*, 799 F.2d 1403, 1407 (9th Cir. 1986). The claimant, however, need not produce objective medical evidence of the actual symptoms or their severity. *Smolen v. Chater*, 80 F.3d 1273, 1284 (9th Cir. 1996).

If the claimant satisfies the above test and there is not any affirmative evidence of malingering, the ALJ can reject the claimant's pain testimony only if he provides clear and convincing reasons for doing so. *Parra*, 481 F.3d at 750 (citing

15 - OPINION AND ORDER

*Lester v. Chater*, 81 F.3d 821, 834 (9th Cir. 1995)).  General assertions that the claimant's testimony is not credible are insufficient.  *Id*.  The ALJ must identify "what testimony is not credible and what evidence undermines the claimant's complaints."  *Id*. (quoting *Lester*, 81 F.3d at 834).

The consistency of claimant's daily activities with the medical record is relevant when determining the claimant's credibility and may constitute a clear and convincing reason to reject a claimant's testimony.  *Smolen*, 80 F.3d at 1284.

Plaintiff testified she hurt her back in April 2008 when she was driving and hit a sinkhole.  Tr. 709, 1021.  She stated she is unable to sit or stand for long periods of time and has to lay down after two hours of sitting or standing.  Tr. 1023.  Plaintiff testified pain radiates down both of her legs "constantly."  Tr. 1023.  Tr. 1023-25.  Plaintiff also testified her neck pain radiates down her arms and hands, makes it difficult for her to turn her head from side-to-side, and is worse when she looks up or down.  Tr. 1027.  Plaintiff also testified she has migraines four-to-five times per week.  Tr. 1025.  Plaintiff testified her diabetes was not under control at the time of her hearing in July 2012, but had previously been under control in March 2012.  Tr. 1027.  Plaintiff testified she spends much of the day laying down and does not like to leave her house.  Tr. 1031-32.

The ALJ concluded Plaintiff's ability to perform various activities of daily living "reflects a higher level of functioning than alleged in her application and testimony." For example although Plaintiff testified she lays down much of the day and is in constant pain, she testified she lives with her 29-year-old son who is disabled and takes care of him.  Tr. 1029. In April 2010 Plaintiff completed a Function Report in which she stated she is generally able to prepare simple meals; performs household chores such as laundry, dusting, and mopping; and goes shopping one time per week.  Tr. 269-70.  In the same report Plaintiff also stated she is able to pay bills, count change, handle a savings account, and use a checkbook.  Tr. 270.

The ALJ also considered Plaintiff's testimony "with caution" because he found she has an "exaggerated pain behavior that is out of proportion to the severity of her impairments."  Tr. 34. The ALJ noted examining physician Jon Benson, Psy.D. diagnosed Plaintiff with a pain disorder associated with psychological factors.  Tr. 829.  Dr. Benson found Plaintiff's "level of somatic preoccupation is above average" and that she "appears to be unusually preoccupied by her health and physical complaints." Tr. 829.  This is consistent with the opinion of examining physician Dr. Weller that Plaintiff exaggerates her pain symptoms.  Tr. 1009.

The ALJ also discredited Plaintiff's testimony because he

17 - OPINION AND ORDER

found she had a "poor work history" that suggests she is not motivated to work consistently. Tr. 34, 37. The ALJ noted Plaintiff worked sporadically with limited earnings even before her alleged onset date. Tr. 34. Plaintiff did not earn any wages between 1997 and 2003. Tr. 167. Plaintiff contends her work history reflects the fact that she was primarily a homemaker. Nevertheless, the record reflects Plaintiff worked from 2003 though 2009, the year of her alleged onset date. Nevertheless, her earnings only reached the level of substantial gainful activity in 2005 during this time period. Tr. 167.

On this record the Court concludes the ALJ provided clear and convincing reasons supported by substantial evidence in the record for finding Plaintiff's testimony not entirely credible. The Court, therefore, concludes the ALJ properly discredited Plaintiff's testimony.

## CONCLUSION

For these reasons, the Court **AFFIRMS** the Commissioner's decision and **DISMISSES** this matter.

IT IS SO ORDERED.

DATED this 17 day of April, 2014.

_____
ANNA J. BROWN
United States District Judge

18 - OPINION AND ORDER